[No. 1745.]

LEROY TRICE *v.* THE STATE.

1. OBSTRUCTING PUBLIC ROADS.— INTENT to wilfully obstruct the public road is the gist of the offense denounced by article 405 of the Penal Code.
2. SAME— CONSTRUCTION OF A TERM— CHARGE OF THE COURT.— The term " wilful," in legal parlance, signifies with evil intent, or legal malice, or without reasonable ground to believe the act to be lawful; and a trial court, charging a jury upon a case involving this question, should, as an essential part of the law of the case, instruct the jury as to the legal meaning of the word " wilful."
3. SAME— FACT CASE.— See evidence *held* insufficient to support a conviction for obstructing a public road, inasmuch as it fails to show an evil intent.

APPEAL from the County Court of Wood. Tried below before the Hon. H. M. Cate, County Judge.

A fine of $50 was imposed upon the appellant, under a conviction for wilfully obstructing a public road.

Bias Wells was the first witness for the State. He testified that he was the constable of precinct number five, Wood county, Texas, and lived at Hawkins. On or about the 13th day of June, 1884, the defendant, who was the conductor on a local freight train on the Texas & Pacific Railway, brought his train into Hawkins and stopped it across the public road which ran across the railway. Witness did not know how long he kept his train in that position, across the road, but it was for several minutes. Some one came to witness and called his attention to the train. Witness was of the impression that that person was Mr. Frank Mabry. This all occurred in Wood county, Texas, on or about June 13, 1884.

On cross-examination, the witness stated that he was a farmer, saloon keeper and constable. He had known the defendant two or three years. He had no knowledge of the duties of a conductor of a local freight train. On one occasion the witness was at Mineola and wanted to go to Hawkins on a freight train, but the defendant refused to take him and it made him angry. He told the witness to telegraph to Mr. Cummings, a railroad official, and that if Cummings would consent he would take the witness. Witness on another occasion wanted to travel with the defendant on the freight train from Mineola to Hawkins, but was refused upon the ground, as stated by the defendant, that, not being allowed to convey passengers, he would be discharged if he transported the witness. Witness got mad and told defendant that if the chance ever offered he would get even with the defendant. He told Broadie and Johnson that he would get even with the defendant if he ever got the chance. This was before witness made this complaint. Witness saw no wagon near or going towards the railroad crossing, and knew of none that wanted to cross at the time the train stood on the crossing. Witness told Mr. Stafford, the defendant's counsel, that the railroad had never treated him right,— that it had never given him a pass though it had given passes to other officers. Witness had no malice against the defendant.

Eddie Blackburn testified, for the State, that he was a clerk in the store of Mr. Glenn, in Hawkins, Texas. He knew the defendant, who was conductor of a local freight train on the Texas & Pacific Railway. Witness saw him when he stopped his train on the road crossing the track. Mr. Mabry came up about the time the train stopped, and asked the witness how long trains usually stopped on that crossing. Witness looked at his watch, and again

looked at it when the train started, and knew that on that occasion the train stood there thirty-five minutes.

On cross-examination, the witness said that he did not remember the hour of the day that the train came into Hawkins, but knew it staid there thirty-five minutes. Witness sat on the porch of the store during that time. From the store to the point where the public road crossed the railroad, the distance was about thirty yards. Witness saw no wagon near the crossing, and saw no one who wanted to cross over.

Frank Mabry, justice of the peace of precinct number five, Wood county, testified, for the State, that he saw the train, on the day charged, enter Hawkins and stop on the public road crossing. Some one, a stranger, came to witness and asked that the road be cleared, as he wanted to get his wagon across and get home. He said that his wagon was behind a store. Witness asked Bias Wells to clear the track. He asked Bias Wells and Ed. Blackburn whose train it was, and both answered that it was defendant's train. Witness saw no wagon near the crossing, but there were some wagons behind Glenn's store. The defendant asked the witness, some days after Wells made complaint, if there was a case against him in witness's court. Witness told him that there was not, when he said that Wells had filed a complaint through malice, but that he was going to plead guilty. Witness knew nothing about the duties of a conductor of a local freight train.

Ed. Johnson, station agent at Hawkins, testified for the defense that he saw the defendant when he came into the station on the day that he is charged to have obstructed the public road crossing the railway. Witness saw no wagon or person who wanted to cross on that occasion. The duties of a local freight conductor are varied. He has to stop at all stations where he has freight to receive or deliver. The length of time that he has to stay at a station is regulated by the amount of work he has to do. Witness heard Bias Wells say that if he ever got a chance he would get even with defendant for refusing to convey him from Mineola to Hawkins. Freight conductors are not allowed to transport passengers, and, if they act in violation of this regulation, they are liable to be discharged. Witness was in and out of his office on several occasions during the defendant's stay in Hawkins on the day he is charged to have obstructed the public road. Witness could not see the crossing from his office in the depot.

The motion for new trial asserted that the verdict was contrary to the law and the evidence.

Whitaker & Bonner, for the appellant.

J. H. Burts, Assistant Attorney General, for the State.

White, Presiding Judge. Under article 405 of the Penal Code, with regard to the *wilful* obstruction of a public road, the *intent* — that is, the fact whether the act was *wilfully* done — is the gist of the offense. (*Brinkoeter* v. *The State*, 14 Texas Ct. App., 67.) When the word *wilful* is used in a penal statute to characterize the forbidden act, it means *evil intent* or legal malice, or without reasonable ground to believe the act to be lawful; and the court charging a jury upon a case involving this question, should, as an essential part of the law of the case, instruct the jury in the legal meaning of the term *wilful.* (*Thomas* v. *The State*, 14 Texas Ct. App., 200; *Shubert* v. *The State*, 16 Texas Ct. App., 645.)

In this particular the charge of the court in the case in hand is radically defective. In our opinion, the evidence on which this conviction rests fails to show an *evil intent* on the part of appellant, and is therefore insufficient to support the verdict and judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered October 18, 1884.]